UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CINDY WARNER,<br><br>    Plaintiff,<br><br>    v.<br><br>AMAZON.COM, INC.;<br>AMAZON WEB SERVICES, INC.;<br>and<br>TODD WEATHERBY, in his<br>   individual and professional<br>   capacities.<br><br>    Defendants. | Case No. 5:21-cv-00866-JWH-KK<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [ECF No. 30]** |

Before the Court is the motion of Defendants Amazon.com, Inc. and Amazon Web Services, Inc. (jointly, "Amazon") and Defendant Todd Weatherby to dismiss the Amended Complaint of Plaintiff Cindy Warner.[1] The Court finds this matter appropriate for resolution without a hearing. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support and in opposition,[2] the Court orders that the Motion is **GRANTED**, as set forth herein.

## I. BACKGROUND

### A. Procedural Background

Cindy Warner was an executive with Amazon.[3] She filed her Complaint commencing this action in May 2021,[4] and she filed the operative Amended Complaint in August 2021. Later that month, Defendants filed the instant Motion, which is now fully briefed.

In this action, Warner asserts the following nine claims for relief:

- sex and gender discrimination in violation of Title VII of the Civil Rights Act of 1964;
- retaliation in violation of Title VII;
- violations of the Equal Pay Act (the "EPA");
- retaliation in violation of the EPA;
- discrimination in violation of California's Fair Employment and Housing Act ("FEHA");
- retaliation in violation of FEHA;

---

[1] Defs.' Mot. to Dismiss ("Motion") [ECF No. 30].

[2] The Court considered the following papers: (1) Am. Compl. ("Amended Complaint") [ECF No. 28]; (2) the Motion (including its attachments); (3) Pl.'s Opp'n to the Motion (the "Opposition") [ECF No. 31]; and (4) Def.'s Reply in Supp. of the Motion (the "Reply") [ECF No. 34].

[3] *See, e.g.*, Amended Complaint ¶ 10.

[4] Compl. [ECF No. 1].

- aiding and abetting in violation of FEHA;
- violations of the California Equal Pay Act (the "CEPA"); and
- retaliation in violation of the CEPA.

**B.    Factual Background**

The facts as alleged in the Amended Complaint are recounted below.

Warner began working for Amazon in February 2020 for a total annual compensation of around $890,000 per year.[5] During the recruitment process, Defendant Todd Weatherby—Warner's recruiter and eventual boss—told Warner that Warner was qualified for a Vice President, Level 10 ("L10") position, but that Amazon did not hire L10 positions externally.[6] Nevertheless, Warner was told during the recruitment process that she would be Weatherby's replacement for succession planning purposes and that no other L10 employees were being groomed for that role.[7] In addition, she was told that she could apply for an L10 role anywhere in the company once she started work.[8] When Warner accepted the job, it was as an L8 employee in the Professional Services division ("ProServe").[9]

Weatherby hired Warner and then served as her boss.[10] Warner alleges that Weatherby was in charge of decisions regarding hiring and firing, professional duties, and compensation for ProServe employees at Warner's level.[11]

---

[5]    *Id.* at ¶ 45.
[6]    *Id.* at ¶ 40.
[7]    *Id.* at ¶ 42.
[8]    *Id.*
[9]    *Id.* at ¶¶ 10 & 43.
[10]   *Id.* at ¶ 47.
[11]   *Id.*

In October 2020, Warner asked Weatherby for more responsibility.[12] Weatherby rejected Warner's request, declaring that she had not proved capable of taking on more responsibility and that she did not understand Amazon's culture.[13] Weatherby added that Warner has "sharp elbows" and does not listen well enough.[14]

During Warner's time at ProServe, she received positive reviews from colleagues and subordinates.[15] In addition, she sometimes escalated issues with respect to possible discrimination against female employees in the division.[16] In April 2021, for example, Warner raised issues regarding four female employees whom Warner believed were being paid less than male employees performing the same work at the same level.[17]

In November 2020, Warner learned that Andy Bailey, a peer who was also at the L8 level, was leaving.[18] Warner suggested to Weatherby that the group that Bailey directed could be combined with the group that Warner directed.[19] Weatherby rebuffed that idea, telling Warner that she lacked the competence needed for the position.[20]

Around January 2021, Warner read a document showing that Amazon planned to hire Bailey's replacement at the L10 level.[21] Warner asked to be considered for that role.[22] Weatherby told Warner that he would neither

---

[12] *Id.* at ¶ 51.
[13] *Id.* at ¶ 52.
[14] *Id.*
[15] *Id.* at ¶¶ 56 & 57.
[16] *Id.* at ¶ 54.
[17] *Id.*
[18] *Id.* at ¶ 58.
[19] *Id.*
[20] *Id.*
[21] *Id.* at ¶ 59.
[22] *Id.*

consider Warner nor anybody else in her L8 peer group for an L10 position.[23] Amazon began distributing externally a job description for that L10 position, contradicting what the company told Warner about not hiring external candidates for L10 positions.[24]

Warner alerted Human Resources that she was not being allowed to apply for that L10 position.[25] Eventually, Human Resources escalated the matter to Lou Manfredo—the head of Human Resources for Amazon Web Services—who declared that the hiring decision was up to Weatherby.[26] Weatherby was free to consider, or not to consider, Warner for that position.[27]

The next month, Warner had a heated conflict with the ProServe director—Dave Lavanty—over a decision regarding a customer relationship.[28] Warner proposed a telephone call to resolve the matter, and she asked that Ed Salas join the call as a Human Resources representative.[29] On the call, Lavanty called Warner a "nobody" and a "bitch."[30] In addition, Lavanty told Warner that he was "going to make damn sure you go nowhere in this organization," and he complained that Warner and Amanda Rankin, who was one of Warner's direct reports, "are idiots!"[31] Lavanty added, "[n]o one wants to work with either of you."[32] Throughout the call, Salas attempted to intervene and to calm

---

[23] *Id.* at ¶ 60.
[24] *Id.* at ¶ 61.
[25] *Id.* at ¶ 65.
[26] *Id.* at ¶ 68.
[27] *Id.*
[28] *See id.* at ¶¶ 69-80.
[29] *Id.* at ¶ 73.
[30] *Id.* at ¶¶ 76-78.
[31] *Id.* at ¶ 76.
[32] *Id.*

Lavanty down.[33] The call ended when Lavanty disconnected—it is not clear whether Lavanty purposely hung up.[34]

After the call ended, Salas told Warner that Salas had "never ever witnessed an assault on another employee like this in all my years in HR."[35] Salas reported the matter to Employee Relations, but the ultimate decision of what to do was left to Weatherby.[36] Around March 8, 2021, Warner had a telephone call with Weatherby, Lavanty, and Toni Handler from Human Resources.[37] On that call—which Handler and Warner thought was going to entail a discussion regarding Lavanty's behavior toward Warner—Weatherby did not admonish Lavanty for Lavanty's behavior.[38]

Three days later, Weatherby announced that Lavanty had been promoted to Vice-President.[39] That announcement came during a year when Lavanty's team had a very high number of complaints for misbehavior such as misconduct, harassment, retaliation, and discrimination.[40] Warner alleges that the announcement was also made at a time when women in ProServe were treated unfairly and when employees who spoke out were punished.[41]

In early April 2021, Warner's counsel transmitted a letter to Amazon detailing Warner's allegations against Defendants of discrimination and retaliation.[42] Three weeks later, Warner was terminated from her position in

---

[33] *Id.* at ¶¶ 75, 77, & 79.
[34] *Id.* at ¶ 79.
[35] *Id.* at ¶ 80.
[36] *Id.* at ¶¶ 80-83.
[37] *Id.* at ¶¶ 84 & 86.
[38] *Id.* at ¶¶ 89-93.
[39] *Id.* at ¶¶ 94-95.
[40] *Id.* at ¶ 95. The Amended Complaint is vague regarding Lavanty's connection to that alleged misbehavior.
[41] *See id.* at ¶¶ 110-139.
[42] *Id.* at ¶ 140.

ProServe.[43] Amazon told Warner that she had to find a new job outside of ProServe within two months, or she would be terminated from the Amazon entirely.[44] While Warner was searching for a new position, Amazon stripped her of her supervisory responsibilities—an act that Warner believes hampered her job search.[45] Warner did not find another position within Amazon, and she was involuntarily terminated on June 30, 2021.[46]

## II. LEGAL STANDARD

### A. Rule 12(b)(6)—Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In ruling on a Rule 12(b)(6) motion, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Am. Family Ass'n v. City & County of San Francisco*, 277 F.3d 1114, 1120 (9th Cir. 2002). Although a complaint attacked by a Rule 12(b)(6) motion "does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Twombly*, 550 U.S. at 555 (citations and footnote omitted). Accordingly, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," which

---

[43] *Id.* at ¶ 141.
[44] *Id.* at ¶ 142.
[45] *Id.* at ¶¶ 144-148.
[46] *Id.* at ¶ 169.

means that a plaintiff must plead sufficient factual content to "allow[] the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A complaint must contain "well-pleaded facts" from which the Court can "infer more than the mere possibility of misconduct." *Id.* at 679.

### B. Rule 15(a)—Leave to Amend

A district court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). The purpose underlying the liberal amendment policy is to "facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Therefore, leave to amend should be granted unless the Court determines "that the pleading could not possibly be cured by the allegation of other facts." *Id.* (quoting *Doe v. United States*, 8 F.3d 494, 497 (9th Cir. 1995)).

## III.  DISCUSSION

Defendants argue that Warner fails to state a claim for gender discrimination under Title VII and the FEHA; fails to state a discrimination claim under the EPA or the CEPA; and fails to allege retaliation plausibly under state or federal law. With respect to the claims against Weatherby, Defendants contend that Warner's claim for aiding and abetting fails as a matter of law and that her claims against Weatherby in his individual capacity must be dismissed.

### A.  Gender Discrimination Under Title VII and FEHA

Title VII and FEHA prohibit employers from discriminating against employees because of their sex in compensation, terms, conditions, or privileges of employment. *See* 42 U.S.C. § 2000e-2(a)(1); Cal. Gov't Code § 12940(a). A plaintiff alleging discrimination under Title VII establishes a prima facie case of discrimination by demonstrating that (1) she is a member of a protected class; (2) she was qualified for his position and performing satisfactorily; (3) she experienced an adverse employment action, and (4) similarly situated

individuals outside her protected class were treated more favorably or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *See Pavel v. University of Oregon*, 774 F. Appx. 1002, 1025 (9th Cir. 2019) (citing *Hawn v. Exec. Jet Mgmt. Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010)). Importantly, under Title VII, "[d]isparate treatment occurs 'where an employer has treated a particular person less favorably than others **because of** a protected trait.'" *Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009)) (emphasis added). Courts apply the same standard to discrimination claims under FEHA. *See Metoyer v. Chassman*, 504 F.3d 919, 941 (9th Cir. 2007) ("California courts apply the Title VII framework to claims brought under FEHA.").

Defendants argue that Warner has not alleged any facts showing that she experienced disparate treatment because of her gender.[47] Warner responds that she alleged that Weatherby held Warner and other female employees to higher performance standards, subjected them to harsher discipline, and provided them with fewer resources and less power than their male counterparts.[48] Warner also contends that she alleges that she was paid less than her male colleagues doing similar work.[49]

Warner's Amended Complaint contains some direct allegations of discrimination:

- A woman was not taken seriously when she complained to Weatherby that a male employee had taken credit for her work.[50] Warner alleges that that

---

[47] Motion 9:14-15.
[48] Opposition 13:19-23; *see also* Amended Complaint ¶¶ 113, 114, 120-126, & 133-135.
[49] Opposition 13:23-25; *see also* Amended Complaint ¶¶ 99-106.
[50] Amended Complaint ¶ 114.

sort of dynamic was "typical," but she does not provide a second example.[51]

- A male employee was chronically absent from meetings and delinquent on assignments, but he was rated as meeting expectations, while female employees were berated for similar behavior.[52]  Warner admits, however, that the delinquent male employee was terminated within a year.[53]  Moreover, Warner provides only one vague example of a female employee being treated differently:  she alleges that she was "scolded" for not having fully read a paper before a meeting.[54]

- Weatherby praised Warner, saying, "I like your tone today!  You are asking questions, showing curiosity and not making statements of judgments.  Keep it up."[55]  Warner alleges that that statement shows that Weatherby wanted Warner to be "submissive and unassertive, which . . . is not what he expects from his male direct reports."[56]

- Weatherby criticized Warner for failing to demonstrate frugality when she provided holiday care packages to employees.[57]  Warner alleges that her male peers took similar actions.[58]  It is unclear, however, whether those male employees reported to Weatherby or were similarly chastised.[59]

---

[51]    *Id.*  It is possible that Warner means to allege a second example in paragraphs 126 and 127 of the Amended Complaint, but the description is unclear.
[52]    *Id.* at ¶¶ 120 & 121.
[53]    *Id.* at ¶ 122.
[54]    *Id.* at ¶ 123.
[55]    *Id.*
[56]    *Id.* at ¶ 124.
[57]    *Id.* at ¶ 125.
[58]    *Id.*
[59]    *Id.*

- While the Amended Complaint is fuzzy in its description, it seems that Warner accuses Weatherby of taking credit for one of Warner's ideas.[60]
- Warner accuses Lavanty of making an offensive remark regarding a gay Amazon employee.  According to Warner, Lavanty "discounted the opinion of the gay male employee who authored" a critical blog post "due to 'the choices he made in his life.'"[61]  While those comments *may* have been discriminatory, Warner fails to provide sufficient detail to explain how or why the Court or the trier of fact should come to that conclusion.
- Warner alleges that Weatherby tends to criticize women for conduct that did not elicit his criticism when performed by men.[62]  To support that claim, Warner notes that Weatherby has chided her for having "sharp elbows," while he tolerates such behavior from men.[63]  Warner then observes that other male managers act as bullies.[64]
- Most seriously, Warner alleges that she was paid less than Lavanty despite performing similar work.[65]  Warner lists responsibilities that she bore from her L8 position and details how similar they were to the responsibilities of someone with an L10 position.[66]  What is unclear from the Amended Complaint, however, is whether employees in L10 positions had responsibilities or authority that Warner lacked, which could explain the discrepancy.[67]

---

[60]  *See id.* at ¶¶ 126 & 127.
[61]  *Id.* at ¶ 132.
[62]  *Id.* at ¶ 135.
[63]  *Id.*
[64]  *Id.*
[65]  *Id.* at ¶¶ 99-106.
[66]  *Id.*
[67]  *Id.*

A plaintiff alleging discrimination "must at least show 'actions taken by the employer from which one can infer, if such actions remain unexplained, that it is ***more likely than not*** that such actions were based on a [prohibited] discriminatory criterion." *Vizcaino v. Areas USA, Inc.*, 2015 WL 13573816, at *4 (C.D. Cal. 2015) (citations and quotations omitted). Moreover, the plaintiff "must show that gender is a substantial factor in the discrimination" and that had her gender been different, she would not have been treated in the same manner. *Id.* (internal citations omitted).

Warner fails to meet that burden. The most specific allegations of in the Amended Complaint are ultimately examples of how Warner was mistreated by Lavanty and how Weatherby gave preferential treatment to Lavanty.[68] While those dynamics could be explained by gender, they could just as easily be explained by Lavanty having a stronger relationship with Weatherby than he did with Warner. The allegations that most clearly allege gender discrimination, by contrast, tend to be "broad and conclusive" and, therefore, insufficient to state a claim. *Ryan v. Santa Clara Valley Transp. Auth.*, 2017 WL 1175596, at *13 (N.D. Cal. Mar. 30, 2017). When Warner alleges systematic mistreatment of women, either she fails to provide specific details to substantiate the claim[69] or the example fails for another reason—such as the assertion that a male employee received preferential treatment despite the fact that he was terminated within a year.

Thus, Warner fails to state a claim for gender discrimination under Title VII and FEHA. The Court is not persuaded, however, that amendment

---

[68] The Amended Complaint also details a number of grievances with Amazon's workplace culture that are not obviously connected to a claim for gender discrimination and go far beyond Rule 8's requirement that a complaint contain a "short plan statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

[69] Except for the single example, discussed above, of a female employee alleging that a male employee used her work without providing her credit.

would be futile. According to Warner, women at Amazon believe that they face systematic discrimination.[70] Moreover, Warner describes an environment in which women—including her—felt maligned and belittled. Accordingly, the Title VII and FEHA claims are **DISMISSED with leave to amend**.

B. **Discrimination Under the EPA and CEPA**

Defendants argue that Warner does not allege that she was paid less than any male peers who performed equal work.[71] Warner counters that she alleges that she "was paid less than male employees who were performing equivalent jobs in similar conditions."[72]

To establish a prima facie case of discrimination under the Equal Pay Act, a plaintiff must show "that employees of the opposite sex were paid different wages for equal work." *Freyd v. University of Oregon*, 990 F.3d 1211, 1219 (quoting *Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1073-74 (9th Cir. 1999)). The plaintiff must show that the jobs are "substantially equal." *Id.* at 1220. "Substantially equal does not necessarily mean identical." *Id.* (quotations and citations omitted). The key issue is "whether the jobs to be compared have a common core of tasks." *Id.* (internal quotations and citations omitted). The elements of an equal pay claim under the EPA and CEPA are identical, and courts use the same analysis for both statutes. *See Vega v. Honeywell Int'l, Inc.*, 2021 WL 1226483, at *14 (S.D. Cal. Mar. 30, 2021).

As a preliminary matter, Warner alleges that she performed substantially similar work to employees at the L10 level, who received higher wages.[73] Defendants argue that it "cannot be asserted that these two positions, at different levels, required substantially the same 'skill, effort, and responsibility'

---

[70] *See, e.g.*, Amended Complaint ¶ 112.
[71] Motion 11:10-11.
[72] Opposition 16:3-4.
[73] Amended Complaint ¶¶ 99-106.

-13-

when the purpose of the leveling system is to reflect varying job demands, supervisory responsibilities, and skills required to perform at each level."[74] That argument lacks merit. Under Ninth Circuit precedent, "it is actual job performance requirements, rather than job classifications or titles, that is determinative." *E.E.O.C. v. Maricopa County Community College Dist.*, 736 F.2d 510, 513 (9th Cir. 1984) (internal citations omitted).

Warner makes broad and conclusory allegations that her work was "consistent with an L10 role," but it lacked the L10 compensation.[75] Her specific allegations are that she and Lavanty shared many of the same responsibilities.[76] However, Warner has not shown that their jobs were substantially similar. In all sorts of workplaces, employees at different levels share *some* of the same responsibilities. Warner does not address whether Lavanty had additional responsibilities and decision-making power that Warner lacked. Indeed, Warner acknowledges in her Amended Complaint that once Lavanty reached the L10 level, he became "her superior," which implies that Lavanty had more authority than Warner had.[77] Defendants point to that discrepancy in their Motion,[78] and Warner fails to address it in her Opposition.

Warner has therefore failed to allege that she was paid less than male colleagues despite performing substantially similar work. Warner's discrimination claims under the EPA and the CEPA are therefore **DISMISSED with leave to amend**.

---

[74]  Motion 13:23-27.
[75]  Amended Complaint ¶ 106.
[76]  *Id.* at ¶¶ 99-105.
[77]  *Id.* at ¶ 109.
[78]  Motion 15:9-15.

### C.     Retaliation

Under Title VII, the EPA, the FEHA, and the CEPA, retaliation occurs when an employer discriminates against an individual for opposing practices prohibited by each statute. *See* 42 U.S.C. § 2000e-3 (Title VII); 29 U.S.C. § 215(a)(3) (EPA); Cal. Gov't Code § 12940(h) (FEHA); Cal. Lab. Code § 1197(k)(1) (CEPA). "To establish a claim of retaliation, a plaintiff must prove that (1) the plaintiff engaged in a protected activity, (2) the plaintiff suffered an adverse employment action, and (3) there was a causal link between the plaintiff's protected activity and the adverse employment action." *Poland v. Chertoff*, 494 F.3d 1174, 1179–80 (9th Cir.2007); *see also Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 868 (9th Cir. 1996) (CEPA has the same requirements to establish a prima facie case of retaliation). In addition, the employee must have had a "reasonable belief" that she reported "conduct that violates Title VII." *ANA Maria Soares v. California*, 2016 WL 3519411, at *5 (E.D. Cal. 2015).

"The causal link between a protected activity and the alleged retaliatory action 'can be inferred from timing alone' when there is a close proximity between the two." *Thomas v. City of Beaverton*, 379 F.3d 802, 812 (9th Cir. 2004) (quoting *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) (finding that the timing of an employee's discipline was sufficient to infer retaliation)). There is no "bright-line rule about the timing of retaliation. There is no set time beyond which acts cannot support an inference of retaliation, and there is no set time within which acts necessarily support an inference of retaliation." *Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003). "Whether an adverse employment action is intended to be retaliatory is a question of fact that must be decided in the light of the timing and the surrounding circumstances." *Id.*

Warner satisfies the first criterion because she alleges that she engaged in protected activity. In April 2021, Warner raised issues regarding pay disparities between male and female ProServe employees who were allegedly performing the same work.[79] That same month, Warner's counsel sent Amazon a letter detailing Warner's allegations of Title VII and EPA violations.[80] Two months later, she filed her Complaint, commencing this action.

Warner satisfies the second criterion because she suffered adverse employment action. Three weeks after Amazon received the letter from Warner's counsel, Warner was removed from her job and was effectively given two months' notice of termination.[81] Her final termination came only one month after she filed her Complaint.[82]

Warner fails, however, to satisfy the third criterion. "Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982). Warner's Amended Complaint does not allege that Weatherby knew of the above-mentioned protected activity.[83] Instead, Warner assets only that ***Amazon*** knew of the protected activity. Because Weatherby was the purported decision-maker with respect to Warner's termination,[84] and because Warner fails to

---

[79] Amended Complaint ¶ 54.

[80] *Id.* at ¶ 140. In her Opposition, Warner argues that she engaged in protected activity when she complained to Weatherby about Lavanty's actions toward her. Opposition 19:1-5. The Amended Complaint does not indicate that Warner engaged in protected activity when she addressed Lavanty's actions because she did not complain that she was being discriminated against on account of her gender. *See, e.g.*, Amended Complaint ¶¶ 108, 137, & 138. Similarly, the Complaint does not sufficiently allege that Warner engaged in protected activity when she "objected to Mr. Weatherby's attempts to silence the employees of Women@ProServe." *Id.* at ¶ 116.

[81] Amended Complaint ¶¶ 141-45.

[82] *Id.* at ¶ 172.

[83] *See, e.g.*, *id.* at ¶¶ 54 & 140.

[84] Warner acknowledges that Weatherby was the decision-maker with respect to her termination. *See, e.g.*, Opposition 22:6-8.

allege that Weatherby had knowledge of Warner's protected activity, Warner has not sufficiently alleged retaliation. Accordingly, Warner's claims for retaliation are **DISMISSED with leave to amend**.

### D. Claims Against Weatherby

Warner alleges that Weatherby aided and abetted in violation of FEHA.[85] Because the Court holds that Warner has not sufficiently alleged FEHA violations, the Court must also hold that she has not sufficiently alleged aiding and abetting FEHA violations. *See Trujillo v. N. Cnty. Transit Dist.*, 63 Cal. App. 4th 280, 289 (1998) ("[T]here's no logic that says an employee who has not been discriminated against can sue an employer for not preventing discrimination that didn't happen, for not having a policy to prevent discrimination when no discrimination occurred.").

Because the Court has dismissed all other claims, it need not decide whether Weatherby is liable in his individual capacity. Warner's claims against Weatherby are therefore **DISMISSED with leave to amend**.

### IV. CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. Defendants' instant Motion to Dismiss is **GRANTED**.

2. Warner's Amended Complaint is **DISMISSED with leave to amend**.

3. Warner is **DIRECTED** to file an amended pleading, if at all, no later than July 22, 2022. If Warner chooses to file an amended pleading, then she is also **DIRECTED** to file contemporaneously therewith a Notice of Revisions to Amended Complaint that provides the Court with a redline version that shows the amendments. If Plaintiff fails to file her amended pleading by

---

[85] Amended Complaint ¶¶ 207-211.

July 22, 2022, then the Court will **DISMISS** Warner's Amended Complaint **with prejudice**.

4. If Warner files an amended pleading, then Defendants are **DIRECTED** to file their respective responses thereto no later than August 12, 2022.

**IT IS SO ORDERED.**

Dated: July 5, 2022

*(signature)*
John W. Holcomb
UNITED STATES DISTRICT JUDGE